# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **DONNA WEST,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | **CASE NO. 2:07CV200** |
| | § | |
| **TYLER PERRY, INDIVIDUALLY and** | § | |
| **d/b/a TYLER PERRY COMPANY,** | § | |
| **TYLER PERRY COMPANY, INC. and** | § | |
| **LIONS GATE ENTERTAINMENT, INC.** | § | |
| | | |
| **Defendants.** | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Donna West's ("West") Motion for New Trial (Docket No. 180).

After considering the parties' briefs, the Court **DENIES** West's motion.

## BACKGROUND

West brought an action for copyright infringement against Tyler Perry, Tyler Perry Company, and Lions Gate Entertainment, Inc. ("Defendants"). West wrote and performed the play *Fantasy of a Black Woman* at the Dallas Junior Black Academy in 1991. Generally, the play is about a woman who is faced with difficult domestic issues including an abusive and unfaithful husband who abandons his family for his mistress. Tyler Perry ("Perry") performed at the Dallas Junior Black Academy in 1998/1999. In 2001, Perry began performing the play *Diary of a Mad Black Woman* about a woman who copes with having her prominent husband leave her for his mistress. In 2005, Lions Gate Entertainment, Inc. made *Diary of a Mad Black Woman* into a movie. West alleged Perry had access to her play when he was at the Dallas Junior Black Academy and he copied it in creating

1

*Diary of a Mad Black Woman*.  At trial, the main issues were whether Perry had access to West's

play such that he copied it, whether he copied it, and whether the two works are so similar that the

jury could find he had copied it even without proof of access.

To prove her case, West had to demonstrate factual copying and substantial similarity.

*Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004).  Factual

copying may be inferred from proof that the defendant had access to the copyrighted work prior to

creation of the infringing work and probative similarity between the two works.  *Id.* at 367-68

(citations omitted).  A plaintiff may also show factual copying by showing striking similarity.  *Id.*

at 368, 372 n.10.  First, West contends that the factual copying element has been met because Perry

had access to West's play *Fantasy of a Black Woman* at the Dallas Junior Black Academy in Dallas,

Texas and that Defendants copied copyrightable aspects of West's *Fantasy of a Black Woman* when

writing and producing the movie *Diary of a Mad Black Woman*.  West also contends that West's play

and Perry's movie are strikingly similar.  Second, West contends that West's play and Perry's movie

are substantially similar.  The jury found that Defendants did not infringe on West's copyright in

*Fantasy of a Black Woman*, and the Court entered final judgment in favor of Defendants.  Jury

Verdict, Docket No. 171; Final J., Docket No. 176.

## APPLICABLE LAW

Federal Rule of Civil Procedure 59 permits a party to file a motion for new trial on any of

the issues.  FED. R. CIV. P. 59(a)(1)(A).  The district court may grant a new trial pursuant to this rule

"where necessary to prevent an injustice."  *United States v. Flores*, 981 F.2d 231, 237 (5th Cir.1993)

(quoting *Delta Eng'g Corp. v. Scott*, 322 F.2d 11, 15–16 (5th Cir.1963), *cert. denied*, 377 U.S. 905

(1964)).  The district court has discretion to grant a new trial under Federal Rule of Civil Procedure

59(a). *Flores*, 981 F.2d at 237. The district court's decision to grant or deny a motion for new trial will be reversed only for an abuse of discretion. *Id.* (citing *Treadaway v. Societe Anonyme Louis-Dreyfus*, 894 F.2d 161, 164 (5th Cir. 1990)). "The district court abuses its discretion by denying a new trial only when there is an 'absolute absence of evidence to support the jury's verdict.'" *Cobb v. Rowan Cos.*, 919 F.2d 1089, 1090 (5th Cir. 1993) (quoting *Irvan v. Frozen Food Express, Inc.*, 809 F.2d 1165, 1166 (5th Cir. 1987)).

A party must make a proper objection to preserve error for appeal. *See United States v. Berry*, 977 F.2d 915, 918 (5th Cir. 1992). "An objection which fails to present the trial court with a sufficient basis to identify and correct the purported infirmity will not preserve error for appeal." *Id.* "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or . . . [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." FED. R. EVID. 103(a). Where a party does not preserve error for appeal, "only plain error, defined as error which would affect the fairness, integrity, or public reputation of the judiciary were it left uncorrected, will warrant relief on appeal." *Berry*, 977 F.2d at 918.

## GROUNDS THAT WEST DID NOT PRESERVE THROUGH OBJECTION

West argues various grounds in her motion for new trial that she did not preserve through objection at trial or otherwise. West asserted the following grounds in her new trial motion but did

not preserve her objections on these grounds: improper appeals to emotions,[1] Defendants misrepresented L.D. Dabney's testimony regarding a copy of West's play *Fantasy of a Black Woman* that was allegedly located at the Dallas Junior Black Academy in 1998,[2] prejudice by unfair surprise created by Defendants' argument that Perry first came to Dallas in 1999,[3] Defendants misrepresented the existence of the original *Diary of a Mad Black Woman* script,[4] evidence of Perry's post-1998 work,[5] the Court's ruling regarding the admissibility of West's copyright registration that is reflected in the Court's ruling on West's motion *in limine*, and the charge misled the jury.

West holds a copyright registration for the asserted work *Fantasy of a Black Woman*. West

---

[1] West argues that Defendants made improper appeals to emotion at trial to elicit the jury to favor Defendants' case. For instance, West points to Perry's testimony stating "I've been through so many emotions in this trial. It's just been unreal. Because this is – this is my name, the thing that I've worked my entire life for, the thing that I was homeless for, the thing that I went through to – I suffered so much." Pl.'s Br. 8. West also points to Perry's counsel's references to Perry's work as "Christian work." However, West never asserted an objection at trial on the grounds of improper appeal to emotions. Thus, West did not preserve any error on this ground.

[2] West asserts that L.D. Dabney established at trial that Perry had a reasonable chance to view West's play, which was allegedly located at the Dallas Junior Black Academy during the same time that Perry was at the Dallas Junior Black Academy. Such information would aid West in proving the "access" and thus "factual copying" aspects of her case. West argues that Defendants misrepresented L.D. Dabney's testimony when Defendants' counsel stated during closing arguments that L.D. Dabney only obtained information via hearsay. However, West did not object to this at trial. Thus, West did not preserve any error on this ground.

[3] West sought to show that West's play was located at the Dallas Junior Black Academy during the same time that Perry was at the Dallas Junior Black Academy in 1998 in order to prove "access." West argues that Perry testified that he was at the Dallas Black Academy in 1998, but Defendants' counsel argued in closing arguments that Perry was not at the Dallas Black Academy in 1998. West argues that Defendants' argument unfairly surprised her. However, West never asserted an objection at trial on the grounds of unfair surprise. Thus, West did not preserve any error on this ground. Furthermore, Defendants assert that the evidence showed that Perry was not in Dallas until March of 1999. West was free to respond on rebuttal.

[4] The existence of an original script would help support Perry's argument that Perry independently created *Diary of a Mad Black Woman* without copying West's *Fantasy of a Black Woman*. West argues that Defendants misrepresented that Perry's original *Diary of a Mad Black Woman* script was in the courtroom and thus created a false appearance that Perry had an original script. However, West never objected at trial on this ground and thus did not preserve error on this ground.

[5] During trial, the Court warned Defendants' counsel to refrain from arguing that Perry's post-1998 success meant that Perry did not copy West's play. West argues that Defendants continued to argue that Perry's post-1998 success indicated that Perry did not copy West's play. However, West never objected to any mention of Perry's post-1998 success. Thus, West waived any error as to Defendants' use of Perry's post-1998 success.

complains that the Court ruled against admitting the registration as evidence. However, West's complaints are based on untrue facts. The Court never ruled against the admissibility of West's registration. Instead, the Court only ruled that if West offered her copyright registration into evidence, then it would be admitted in its entirety, including its registration date.[6] Docket No. 146 at 4. In light of this order, West never offered her copyright registration into evidence. Thus, West voluntarily chose to omit her registration from evidence. Also, even if the Court excluded West's registration, West did not make an offer of proof of her registration and thus waived her objection on the admissibility of the registration. Accordingly, West does not have a basis for asserting error as to the admissibility of her copyright registration.

As to whether the Court's ruling itself was prejudicial, the ruling was required for fairness. The Court ruled that if West offered her copyright registration into evidence, then it would be admitted in its entirety, including its registration date. Docket No. 146 at 4. "To do otherwise would allow West to argue the benefits of a registration certificate without allowing Perry/Lyons Gate to argue the negative implications of the registration date." Docket No. 146 at 4. The registration date did in fact carry negative implications. West performed her play in 1991. Pl.'s Resp. to Defs.' Mot. for Summ. J. 5. Perry claimed he wrote *Diary of a Mad Black Woman* in or about 2000. Pl.'s Resp. to Defs.' Mot. for Summ. J. 6. West claimed Perry potentially had access to her play during 1991 to the time Perry claimed he wrote *Diary of a Mad Black Woman*. Pl.'s Resp. to Defs.' Mot. for Summ. J. 5-6, 14-19. Thus, any copying that occurred took place well before West registered her

---

[6]The Court asserted that the contents of its order on motions *in limine* regarding West's and Perry's copyright registrations applied as a ruling at trial. TT Dec. 2 2008 19:16-20:3; *see* Docket No. 146. Thus, the Court's ruling on these motions *in limine* became rulings at trial.

play on March 20, 2006.  Also, the date of registration raised issues of timeliness of the registration.[7]

Defendants had the right to argue these points if West contended that her registration supported her

case.  Accordingly, if West introduced her registration, the Court had to allow the registration date

into evidence.

        Given that West did not preserve error on the grounds discussed above, plain-error review

applies.  However, West did not argue that the Court committed plain-error on any of these grounds;

thus, West does not substantiate her request for a new trial.  Accordingly, these grounds do not

warrant a new trial.

## GROUNDS THAT WEST PRESERVED THROUGH OBJECTION

### "Golden Rule" Argument

        During opening statements, Perry's counsel, Ms. Veronica Lewis, stated:

> It is a very important matter for Mr. Perry.  But it is really a matter that has broader
> implications because what Ms. West is doing is she is saying that Mr. Perry stole from
> her.  Her allegation is Tyler Perry stole my play and copied it and passed it off
> as his own.  Imagine yourself being in that situation.  Imagine that kind of allegation
> being thrown about, about you.

Trial Transcript ("TT") 12/2/08 a.m. 57:11-17.  West's counsel, Mr. Aubrey Pittman, objected to

Perry's counsel's statement, "Imagine yourself being in that situation.  Imagine that kind of

allegation being thrown about, about you," as a "golden rule" argument.  The Court sustained the

objection.  West now contends this warrants a new trial notwithstanding the Court's ruling sustaining

---

[7]Registration must be timely to establish prima facie evidence.  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d
131, 141 (5th Cir. 2004).  A registration is timely if made "within five years of [a] work's first publication.  If the
copyright is registered after the five-year period, the court may give as much weight to the copyright registration as it
desires."  *Berg v. Symons*, 393 F. Supp. 2d 525, 539 (S.D. Tex. 2005); *see* 17 U.S.C. § 410.  Registration may also
allow for statutory remedies and attorneys' fees if it is timely.  *See* 17 U.S.C. § 412.  Registration can only be timely
in this regard if a copyright "has an effective date of registration not later than the earlier of 3 months after the first
publication of the work or 1 month after the copyright owner has learned of the infringement."  17 U.S.C. § 412.

her objection.  Defendants counter that Defendants' counsel did not make a "golden rule" argument, that the "golden rule" argument objection only applies to arguments that go to the issue of damages and Defendants' counsel only argued liability in the statements at issue, and that West failed to preserve her argument because she did not request a curative instruction.

The "golden rule" argument objection does not apply to Defendants' counsel's statement cited above because such argument applies only to issues of damages and not liability.  *Stokes v. Decambre*, 710 F.2d 1120, 1128 (5th Cir. 1983) ("The use of the Golden Rule argument is improper only in relation to damages.  It is not improper when urged on the issue of ultimate liability.").  Ms. Lewis asked the jury to place themselves in the position of Perry, stating "imagine yourself being in that situation.  Imagine that kind of allegation being thrown about, about you."  TT 12/2/08 a.m. 57:14-17.  While this is akin to a "golden rule" argument, Defendants used this argument on the issue of liability and not damages.  *See Whitehead v. Food Max of Miss., Inc.*, 163 F.3d at 265, 278 (5th Cir. 1998).  Immediately preceding the alleged "golden rule" argument, Defendants' counsel stated, "It is a very important matter for Mr. Perry.  But it is really a matter that has broader implications because what Ms. West is doing is she is saying that Mr. Perry stole from her.  Her allegation is Tyler Perry stole my play and copied it and passed it off as his own."  TT 12/2/08 a.m. 57:11-15.  In this excerpt, Defendants' counsel is describing West's allegations regarding liability and never mentions damages.  Because the "golden rule" argument objection does not apply to argument on the issue of liability, Defendants' counsel did not make an improper argument.  Also, the Court sustained West's objection, and West did not request further relief in the way of a curative instruction or otherwise.  *See* TT 12/2/08 a.m. 57:11-15.  Thus, West's "golden rule" argument does not support granting a new trial.

**Perry's Counsel's Comment on West's Counsel's Omission of Language**

During trial, Perry's counsel included material from Perry's deposition testimony for optional completeness.[8] *See* TT 12/02/08 97:14-98:14; *see* TT 12/04/08 115-18. In her closing statement, Ms. Lewis advised the jury "And you ought to always be suspicious when somebody shows you an answer without the question. Because you'll remember we forced them to show the question." Mr. Pittman objected, explaining that "[t]he answer was shown without the question because of an order by this Court and Ms. Lewis is implying that there was another reason why the question won't wasn't [sic] there. The question was taken out simply to comply with the Court's order." TT 12/9/08 130:14-19. The Court overruled Mr. Pittman's objection. TT 12/9/08 130:20. West argues that Ms. Lewis's comment to the jury was improper because Mr. Pittman had a sound reason for omitting the question referred to by Ms. Lewis from the jury—namely, to adhere to the Court's order that prohibited the mention of Perry's copyrights. Defendants respond that Ms. Lewis's statements were not improper because Mr. Pittman made references to demonstrative exhibits without preceding questions, leaving the answer to be mischaracterized by Mr. Pittman, and Ms. Lewis was merely correcting that mischaracterization. The parties dispute whether during her closing statement, Ms. Lewis could properly assess the reason why Mr. Pittman omitted a question from Perry's deposition testimony.

---

[8]During direct examination of West, Mr. Pittman stated: "Let me show you an exhibit that we showed the jury during the opening statement, and this is a — when Mr. Perry was asked under oath to describe his play, the 'Diary of a Mad Black Woman,' this is a description he gave it. And I want to ask you to take a look at it. Again, this is Mr. Perry's description of his work. And tell me whether this reminds you of anything." TT 12/02/08 96:23-97:4. Ms. Lewis objected stating that Mr. Pittman mischaracterized Perry's deposition testimony. Ms. Lewis stated for optional completeness that Mr. Pittman asked Perry in the deposition "I mean, and that is what I am asking you. I want the specifics that are atypical that make it copyrightable." Ms. Lewis then stated that this question preceded what Mr. Pittman presented to West. TT 12/02/08 97:5-98:12. Also, during cross-examination, Ms. Lewis played Perry's deposition testimony that showed that during the deposition, Mr. Pittman asked Perry about what is copyrightable about Perry's *Diary of a Mad Black Woman*.

Ms. Lewis properly gave her interpretation of Mr. Pittman's omission. "The sole purpose of closing argument is to assist the jury in analyzing, evaluating and applying the evidence." *United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008) (citation omitted). Ms. Lewis explained to the jury the possibility that they should be suspicious when answers are presented without their corresponding questions and explained that Defendants had to show questions from deposition testimony when West did not. Ms. Lewis referred to occurrences and evidence presented at trial and gave her interpretation of the evidence. This is in line with the purpose of closing statements, which is to help the jury analyze the evidence. Accordingly, Ms. Lewis did not improperly comment on Mr. Pittman's omissions from deposition testimony. Also, Mr. Pittman could have addressed Ms. Lewis's interpretation in rebuttal and explained why he left out the question at issue. Instead, Mr. Pittman decided against this approach. Thus, even if Ms. Lewis made an improper argument, Mr. Pittman declined to remedy any prejudice created by Ms. Lewis's argument. Accordingly, Ms. Lewis's interpretation of Mr. Pittman's omission of a question from an answer does not warrant a new trial.

**Expert Witness Michael Gale**

Michael Gale testified as Defendants' expert on whether Perry copied West's *Fantasy of a Black Woman*. West contends that Gale is not qualified and that his testimony is neither relevant nor reliable. West argues that Gale's testimony is unreliable because Gale relied on the expertise of another person that Gale had never met, relied upon newspaper articles by authors he did not know, and did not perform a side-by-side comparison of all of the protectable and nonprotectable elements of the asserted and the accused work. Additionally, West contends that Gale improperly submitted additional opinions in his charts that extended beyond Gale's expert report.

Defendants respond that Gale's omission of a side-by-side comparison test is irrelevant. Defendants argue that a side-by-side comparison is relevant only to the substantial similarity issue, and Gale only testified to the issue of "factual copying," which may be found where there is "probative similarity" or "striking similarity." Defendants also respond that Gale is qualified and list Gale's education and various experiences in the film industry. Additionally, Defendants respond that Gale did not submit any additional opinions beyond his expert report and asserts that the Court sustained West's objections as to Gale's charts that West now complains of. The parties thus dispute whether Gale is qualified, whether Gale's methodology is reliable, and whether Gale improperly introduced opinions not found in his report.

West argues that Gale is not qualified to testify as an expert. In evaluating an expert's qualifications, "As long as some reasonable indication of qualification is adduced, the court may admit the evidence without abdicating its gate-keeping function." *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999) (superceded on other grounds). Gale has his degree in film and has decades of experience in the film industry. Gale has been an accomplished screenwriter since 1973, was an Academy Award nominee for co-writing the "Back to the Future" screenplay, is familiar with thousands of films, and worked as an expert witness on prior copying cases, a judge of screenwriters contests, and a screen credit arbitrator of Writer's Guild of America arbitrations. This level of education, experience, and accomplishments are more than a reasonable indication of qualifications that permit Gale to testify as an expert witness in the area of screenwriting and film.

West argues that Gale's use of information provided by other experts and authors without knowing who the experts and authors are first-hand render Gale's opinion unreliable. "The existence of . . . a reliable methodology is in all instances mandatory." *Hathaway v. Bazany*, 507 F.3d 312 (5th

Cir. 2007) (citation omitted). The issue of reliability is "not a question that can be answered by some generic test. The variability of type and purpose of the particular testimony at issue requires flexibility." *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002). Using the opinions of others is not inconsistent with a reliable methodology. Experts often refer to other experts and authors whom they have never met. Given the abundance of written information that exists on any given subject, it would be impractical to require experts to have met all those who they use in a methodology. Furthermore, West does not offer any reasons or cite to any case law indicating that first-hand knowledge of an author/expert is a prerequisite to using information provided from that author/expert. West does not even specify which experts and authors Gale should not have relied upon. Accordingly, Gale applied a reliable methodology.

West also argues that Gale did not perform a side-by-side comparison of all of the protectable and nonprotectable elements of the asserted and the accused works. To establish a claim for copyright infringement, a plaintiff must prove both factual copying and substantial similarity. *Positive Black Talk*, 394 F.3d at 367. To prove factual copying, a plaintiff may show access with probative similarity or may show striking similarity. *Id.* at 368, 371 n.10. To satisfy the substantial similarity element, a side-by-side comparison must be made between the original and the copy to determine whether a layperson would view the two works as substantially similar. *Id.* at 374 (citing *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997)). Thus, the side-by-side comparison requirement is for showing substantial similarity but is not a stated requirement for showing probative similarity or striking similarity. Defendants' attorneys did not ask Gale to address substantial similarity; rather, his analysis focused on probative similarity. TT 12/08/08 206:2-10. Gale could show lack of probative similarity or striking similarity without using a side-by-side

comparison of all of the protectable and nonprotectable elements of the asserted and the accused works. Accordingly, Gale did not give unreliable testimony.

Finally, West argues that Gale improperly introduced several charts containing Gale's new opinions. However, the Court sustained West's objections as to Gale's charts and excluded them. TT at 12/08/08 at 136-39. Although West attached excerpts from approximately twenty-five trial transcript pages "which details some of the discussion that ensued regarding Gale's new opinions," *see* Pl.'s Br. 21, West does not specifically cite to any objections as to new information introduced by Gale during his testimony or specifically identify what new information was introduced. Thus, West's argument regarding the chart is moot and does not warrant a new trial.

**Impact that the Litigation Had on Perry**

Perry testified that the litigation has caused him to lay off his employees so that he could fight this case and clear his name. TT at 12/03/08 299:1-6. West objected to this testimony indicating that there are other reasons why Perry had to lay off employees. TT at 12/03/08 299:7-19. The Court responded that West could cross-examine Perry on West's concerns. TT at 12/03/08 299:20-21. The Court later prohibited the parties from raising the issue of Perry's business and why Perry had to lay off employees. TT at 12/04/08 15:12-14. The Court instructed the jury "what's happened with [Perry's] business for whatever reasons is not relevant to any issue in this lawsuit." TT at 12/04/08 15:8-12. West did not object to the Court's curative instruction. West complains that Perry's statements regarding laying off employees prejudiced West and that West did not have a chance to cross-examine Perry on the reasons for Perry laying off his employees. Defendants respond that the Court cured any prejudice caused by Perry's statements regarding Perry's business.

The Court's curative instruction adequately cured any harm caused by Perry's testimony

regarding his business. A curative instruction may render the prejudicial effect of error harmless. *United States v. Lucas*, 516 F.3d 316, 345 (5th Cir. 2008). The Court clearly expressed its disapproval of matters that are collateral to the lawsuit. After Perry testified to laying off various employees of his company, the Court stated "Excuse me, Mr. Perry, I'm going to instruct the jury that what's happened with his business or doesn't happen with his business for whatever reasons is not relevant to any issue in this lawsuit. And I'm going to instruct counsel not to go into anymore – both counsel not to go into anymore matters that are collateral to this lawsuit." TT at 12/04/08 14:20-15:14. Thus, the jury was aware that matters regarding Perry's business are not relevant. As a result, the Court cured any prejudice caused by statements regarding the impact that the litigation had on Perry's business.

Even if the instruction was not curative, allowing Perry to testify to his business and laying off his workers and not allowing cross examination on the issue would nevertheless be harmless error. A new trial is required "only when, after a review of the entire record, it appears that there is a significant possibility that the prejudicial evidence had a substantial impact on the jury verdict." *Lucas*, 516 F.3d at 345. Perry's testimony on laying off his employees to fight this litigation is largely innocuous. To establish copyright infringement, West must own a valid copyright and prove factual copying and substantial similarity. *Positive Black Talk Inc.*, 394 F.3d 367-68 (citations omitted). Perry's statements regarding his business are irrelevant and did not have a substantial impact on these substantive issues. Thus, these statements were not prejudicial. Also, West does not present any evidence showing that Perry's statements had a substantial impact on any of the jury's substantive determinations or that the jury was emotionally swayed by Perry's business situation. Accordingly, if there was error, it was harmless.

13

Given the Court's express curative instruction and the low probative value of Perry's statement regarding Perry's business, any error was harmless and does not warrant a new trial.[9]

**Court's Charge and Verdict Form**

*Request for "any of the protectable elements" in Issue No. 1 of Verdict Form*

The final verdict form asked as the first issue "Do you find that the movie of *Diary of a Mad Black Woman* infringed Plaintiff's copyright, if any, in *Fantasy of a Black Woman*?" Verdict Form, Docket No. 171 at 1. At the charge conference, West argued that the first issue should ask whether *Diary of a Mad Black Woman* infringed "any of the protectable elements" in *Fantasy of a Black Woman*. TT 12/09/08 44:24-45:8; 47:14-15. The Court ruled against adding the phrase "any of the protectable elements." *See* TT 12/09/08 48:16-19. West contends this prejudiced her because omitting this phrase deemphasized the copyrightable aspects of West's work and favored Defendants, who focused on the noncopyrightable elements of West's work. Defendants did not address West's arguments.

West argues that the verdict form should have specified that the jury should look to protectable elements when considering infringement. However, the charge included a "copyrightable subject matter" section that detailed the law on the originality requirement and the difference between noncopyrightable ideas and copyrightable expression. Charge of the Court, Docket No. 170 at 5-6. These instructions clarified to the jury that only original forms of expression are protected by West's copyright. *Id.* Thus, the jury had sufficient information in the charge on how to

---

[9]West preserved error on Perry's testimony regarding laying off his workers, but did not preserve error on the Court's instruction. Thus, plain error review applies. *Berry*, 977 F.2d at 918. However, West does not argue that the Court committed plain error and thus does not support an argument regarding the Court's curative instruction that prevented West from cross-examining Perry as to why Perry laid off workers.

distinguish copyrightable subject matter from non-copyrightable subject matter so that the jury could properly consider West's infringement allegations based only on copyrightable aspects of West's work.  Accordingly, the verdict form did not unduly emphasize noncopyrightable subject matter.

Furthermore, asking whether *Diary of a Mad Black Woman* infringed "any of the protectable elements" in *Fantasy of a Black Woman* would be misstating copyright law.  To establish a claim for copyright infringement, a plaintiff must demonstrate "substantial similarity." *Positive Black Talk Inc.*, 394 F.3d at 367.  "Substantial similarity" requires that a defendant copied a substantial amount of protectable elements.  *Id.* at 370, 370 n.9.  Stating the issue as whether Defendants' accused work infringed on any of the protectable elements of West's work tends to undercut the substantial similarity requirement because "substantial similarity" requires more than infringement of "any" protectable elements; it requires substantial similarity between the defendant's accused work and the plaintiff's asserted work.  Thus, the Court properly overruled West's request to include the phrase "any of the protectable elements."

*Objection to "if any" in Issue No. 1 of Verdict Form*

The final verdict form stated the first issue as "Do you find that the movie of *Diary of a Mad Black Woman* infringed Plaintiff's copyright, if any, in *Fantasy of a Black Woman*?"  Verdict Form, Docket No. 171 at 1.  At the charge conference, West objected to including "if any," arguing that those words implied that West does not have a copyright.  TT 12/09/08 47:17-19;48:20-29:2.  West complained that she did not know that she had to prove she had a copyright in *Fantasy of a Black Woman* and would have introduced her copyright registration in *Fantasy of a Black Woman* if she had known this information.  TT 12/09/08 50:2-9.  West contends that the Court prejudiced West by including "if any" in the first issue of the verdict form because the Court in effect prohibited West

15

from introducing her copyright registration by informing West that she must prove her copyright registration only after the close of the evidence.[10]  West also contends that the charge misled the jury as evidenced by Juror Number 1's question: "is a work considered to have been copyrighted; i.e., are there any procedures that must take place to copyright a work?"  TT 12/09/08 82:7-9.  Defendants respond that the Court never stated a requirement to the jury that West must have a copyright registration and that the Court properly instructed the jury on what is and is not copyrightable so the jury could properly determine whether Defendants infringed West's copyright.

West argues that the Court stated a requirement that West needed to own a valid registered copyright too late in the proceedings and thus prejudiced West.  However, the Court never stated such a requirement in the verdict form, the charge, or at any time during the proceedings.  In fact, during the charge conference, the Court stated that "if any" did not instruct the jury in regards to West's copyright registration and instead referred to whether material in West's work is copyrightable.  Thus, West's argument is factually incorrect and does not warrant a new trial.

West also argues that the charge misled the jury.  However, West offers no explanation as to how the charge misled the jury except by an exemplary reference to Juror Number 1's question.

---

[10]West also argues that the charge should have stated that West owned a valid copyright.  However, West did not make this argument at the charge conference.  Thus, West did not preserve error on this point.  Also, although West proposed a jury instruction that West owned a valid copyright, this does not preserve error because such a proposal is non-specific.  "A party who objects to an instruction or the failure to give an instruction must do so on the record, *stating distinctly the matter objected to and the grounds of the objection*."  *Positive Black*, 394 F.3d at 368 (citing FED. R. CIV. P. 51(c)(1)) (emphasis added).  West did not cite her objection distinctly.  West instead proposed that the jury instructions include, "In this case [the Court] has previously determined, or the parties have not contested, that Ms. West owns valid copyrights in the *Fantasy* Play.  Therefore, you will not need to decide this issue."  Proposed Jury Instructions No. 36, Docket No. 68.  West made this proposal amongst sixty-nine proposed instructions that comprise just under one-hundred pages.  *See id.*  Thus, West did not state distinctly the matter objected to.  West also did not state any grounds for her request and instead only hypothesized that the Court has predetermined West's ownership of a valid copyright or that the parties did not contest the matter, *see id.*, neither of which West even argues as true.  Thus, West has not preserved error on instructing the jury that she owns a valid copyright.

The Court proposed a reply to Juror Number 1's question that "the Court's charge contains all of the instructions regarding the law." TT 12/09/08 82:10-14. When the Court asked if there were any objections to that proposal, Mr. Pittman replied that West did not have an objection. TT 12/09/08 82:17-18. Thus, West agreed with the Court's resolution of the Juror's question by reference to the charge. Accordingly, West waived any objection she may have in regards to the manner in which the charge instructed the jury on procedural requirements of a copyright. In any case, the charge addressed what is required for copyright protection in the "Copyrightable Subject Matter," section of the charge, and registration is not stated as a requirement. *See* Charge of the Court, Docket No. 170 at 5-7. Accordingly, the charge did not mislead the jury in regard to procedures that must take place to copyright a work.

*Scènes* à *Faire*

The Court included a section in the charge, "The Doctrine of *Scènes à Faire*." The section states

> Defendants assert that their work does not infringe Plaintiff's copyright because of the doctrine of *scènes* à *faire*. Under the *scènes* à *faire* doctrine, copyright protection is denied to those expressions that are standard, stock, or common to a particular topic or that flow necessarily or naturally from a common theme or setting.

Charge of the Court, Docket No. 170 at 7. At the charge conference, West contended that Defendants attempted to mislead the jury by focusing on stock elements and characters that West did not claim were copyrightable. TT 12/09/08 39:15-40:5. West argued that both the existence and the content of the *scènes* à *faire* instruction placed undue emphasis on Defendants' assertions of stock elements and characters found in West's work. TT 12/09/08 39:15-40:5. The Court overruled West's objection. TT 12/09/08 40:6-7. West argues that the Court should have sustained West's

objection as to the *scènes à faire* section, puts forth the same arguments stated at the charge conference, and adds that Defendants improperly asserted stock elements because courts compare only the copyrightable aspects of two works to determine substantial similarity. Defendants respond that they properly addressed what is not copyrightable in West's asserted work because a step in a copyright infringement analysis is to determine what aspects of an asserted work are and are not copyrightable. Defendants also respond that the *scènes à faire* section of the charge is consistent with Fifth Circuit case law. The parties dispute the relevance of the *scènes à faire* section of the charge.

The *scènes à faire* section of the charge was relevant and properly informed the jury on what aspects of a work are not copyrightable. The *scènes à faire* instruction clarified which aspects of West's work could be copied so that the jury would not erroneously conclude that Defendants infringed West's work based on noncopyrightable material. West admits that her work contains both copyrightable and noncopyrightable portions. The noncopyrightable portions included *scènes à faire*, for instance, the themes of a philandering husband and an abused wife. TT 12/09/08 39:23-25 (West's counsel admitting that West does not claim that the philandering husband and abused wife themes of her work are protectable); *see generally Fantasy of a Black Woman*. Copyright protection is given to only copyrightable aspects of a work. *See Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533-34 (5th Cir. 1994). Given that West's work included both copyrightable expression and noncopyrightable *scènes à faire*, an instruction to the jury differentiating *scènes à faire* from copyrightable material was not only proper, but was necessary. Furthermore, the *scènes*

à *faire* instruction is an accurate instruction of the law. *Compare* Charge of the Court, Docket No.

170 at 7 ("copyright protection is denied to those expressions that are standard, stock, or common

to a particular topic or that flow necessarily or naturally from a common theme or setting" *with*

*Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1334 (5th Cir. 1994) ("materials

not subject to copyright include . . . *scenes a faire*, i.e., expressions that are standard, stock or

common to a particular subject matter or are dictated by external factors") *and Kepner-Tregoe, Inc.*,

12 F.3d at 536 (denying copyright protection "to those expressions that are standard, stock, or

common to a particular topic or that necessarily follow from a common theme or setting") (referring

to *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 383 (10th Cir. 1993) for the definition

of *scènes* à *faire*). Thus, the definition for *scènes* à *faire* in the charge was proper and did not place

undue emphasis on the noncopyrightable aspects of West's work.

**Verdict Against the Great Weight of the Evidence**

West contends that the jury's verdict was against the great weight of the evidence. West

argues that the evidence showed a striking similarity between Perry's work *Diary of a Mad Black*

*Woman* and West's work *Fantasy of a Black Woman*. West argues that the testimony by Asia

Williams, L.D. Dabney, and Whitt-Lambert and West's exhibit 57 (Whitt-Lambert's summary,

"Examples of Similarities in Expression") support that the works are strikingly similar. West further

argues that Defendants did not rebut West's evidence of striking similarity that proved factual

copying, noting that Defendants' expert Gale did not perform a side-by-side comparison of

protectable elements and so did not perform the required analysis for disproving striking similarity.

West also contends that even if West did not show striking similarity, West proved access and

probative similarity to establish factual copying. West argues that Perry had access to West's

asserted work because Perry was at the Dallas Junior Black Academy when the director of the Dallas Junior Black Academy had West's work. West further argues that only West's expert Whitt-Lambert performed a side-by-side comparison of protectable aspects of West's asserted work and Perry's accused work. West contends that since this was the only evidence regarding protectable expressions, the jury should have found substantial similarity and thus infringement.

Defendants respond that West did not prove striking similarity because establishing striking similarity requires that a plaintiff's and defendant's works are so similar that they could only be explained by copying; however, Defendants' expert Gale testified that it was possible and probable that Perry wrote his accused work independently of West's asserted work. Defendants further assert that West's expert Whitt-Lambert admitted that she did not know if there was any possibility that Perry could have written his accused work without copying West's asserted work. Defendants also contend that West did not establish an inference of copying because West did not prove that Perry had access to West's asserted work. Defendants argue that the testimony of Perry, Curtis King, and L.D. Dabney established that Perry had never been given a copy of West's asserted work and West did not adequately contradict this. Defendants also contend that even if West established factual copying, West did not establish substantial similarity between Perry's accused work and protectable aspects of West's asserted work. Defendants argue that any similarities between the two works are of unprotectable aspects of West's asserted work.

The jury's verdict does not go against the great weight of the evidence.

To establish actionable copying (i.e., the second element), a plaintiff must prove: (1) factual copying and (2) substantial similarity. Factual copying "can be proven by direct or circumstantial evidence." "As direct evidence of copying is rarely available, factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative

20

similarity.*"*

*Positive Black Talk Inc.*, 394 F.3d at 367-68 (quoting *Peel Co. v. Rug Mkt.*, 238 F.3d 391, 394 (5th Cir. 2001)). Alternatively, "a plaintiff may establish factual copying without any proof of access 'when the similarity between plaintiff's and defendant's works is sufficiently striking such that the trier of fact may be permitted to infer copying on that basis alone.'" *Positive Black Talk Inc.*, 394 F.3d at 372 n.10 (quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1302[B] at 13-16) (2004)). "Striking similarity" requires that the similarity between the two works "could only be explained by actual copying." *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007) (citing *Positive Black Talk Inc.*, 394 F.3d at 372 n.10 ).

First, the jury could reasonably find that West's asserted play and Perry's accused movie are not "striking[ly] similar[]." During trial, West read her asserted work, the play *Fantasy of a Black Woman*, and Defendants played Perry's accused work, the movie *Diary of a Mad Black Woman*. Thus, the jury had the opportunity to compare the asserted and accused works side-by-side to determine if they were so similar that the works could only be explained by actual copying. Also, Defendants' expert Gale testified that the similarities between West's play and Perry's movie did not indicate copying, TT 12/08/08 107:12-20, and West's expert Whitt-Lambert could not state that Perry necessarily copied West's play. TT 12/04/08 244:4-6. Given this evidence, the jury could have reasonably concluded that the similarities between West's play and Perry's movie were attributable to some reason other than copying, like coincidence. Thus, the jury could reasonably find no striking similarity between West's play and Perry's movie. Accordingly, given that the evidence and testimony at least offers a reasonable ground that West's play and Perry's movie are not strikingly similar, the jury's verdict was not against the great weight of the evidence.

Second, the jury could reasonably find that West did not prove access to prove factual copying. "To determine access, the court considers whether the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work. A bare possibility will not suffice; neither will a finding of access based on speculation or conjecture." *Peel*, 238 F.3d at 39. West contended Perry had access to West's play at the Dallas Junior Black Academy when Curtis King, Dallas Junior Black Academy's director, had West's play at the Dallas Junior Black Academy. West's support for her theory is tenuous at best. West's theory is based on L.D. Dabney's testimony that he gave a copy of West's play to Bernice Washington, who did not testify, in 1998 to inquire about the play as an investment. Dabney testified that Washington and King later called Dabney to ask about West's play and to see if Donna West was the West that had been known as Donna McAdoo. TT at 12/03/08 172:2-12. However, even if King had West's play at the time of the conversation with Washington and Dabney, this does not demonstrate that Perry had access to West's play via King. King may have thrown West's script away or secured it in a locked filing cabinet. At most, Dabney's testimony only shows that King had West's play in 1998, which is allegedly the same time that Perry was at the Dallas Junior Black Academy. The rest of West's access theory is conjecture.

Furthermore, substantial evidence at least placed doubt as to whether Perry had access to West's play. Perry testified that Curtis King never gave Perry anything and particularly never gave Perry West's script of her asserted play and that Perry had never met West. TT 12/03/08 at 285:2-5; 312:15-21; 324:10-14. Curtis King confirmed that he never gave Perry West's play and did not even "float" or "pitch" play or film ideas to Perry. TT 12/08/08 at 317:1-7; 319:15-320:3. Arthur Primas, Perry's promoter, testified that he had never seen West's script and had never heard of West. TT

12/08/08 at 254:24-255:25; 260:8-261:11; 254:11-15. In light of the conjectural nature of West's theory and the testimony given by Perry, King, and Primas, the jury could have reasonably concluded that West did not prove that Perry had reasonable access to West's play.

Even if the jury concluded that Perry had access to West's play, the jury could have reasonably concluded West did not prove probative similarity. Determining whether two works are probatively similar "requires determining whether [two works], when compared as a whole, are adequately similar to establish appropriation." *Peel*, 238 F.3d at 397. The jury had the opportunity to compare the asserted and accused works side-by-side to determine if they were adequately similar to establish appropriation. Also, Defendants' expert Gale testified that the similarities between West's play and Perry's movie did not indicate copying, TT 12/08/08 107:12-20, and West's expert Whitt-Lambert could not state that Perry necessarily copied West's play. TT 12/04/08 244:4-6. Given this evidence, the jury could have reasonably concluded that the similarities between West's play and Perry's movie could be explained by some other reason than copying and thus reasonably found that West's play and Perry's movie are not probatively similar.

Accordingly, the jury could have reasonably concluded that West did not prove factual copying because they could have reasonably found that West's play and Perry's movie are not strikingly similar and that Perry either did not have reasonable access to West's play or that West's play and Perry's movie are not adequately similar to establish appropriation.

Even if the jury found that West proved factual copying, the evidence could support a jury determination that West's play and Perry's movie were not substantially similar. "To determine whether an instance of copying is legally actionable, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as

'substantially similar.'" *Creations Unlimited*, 112 F.3d at 816. Only the protectable aspects are considered in determining substantial similarity. *Kepner-Tregoe*, 12 F.3d at 533. As discussed *supra*, the jury listened to West's play and viewed Perry's movie during trial. Thus, the jury could determine whether any copying allegedly committed by Perry was legally actionable. West argues that her expert Whitt-Lambert was the only expert to testify to "substantial similarity." West's expert performed a side-by-side comparison and opined that seventeen copyrightable aspects of West's play were found in Perry's movie. Whitt-Lambert also provided testimony defending her rationale. *E.g.*, TT 12/04/08 156:8-160:8. However, the jury was not bound by West's expert's opinion but was free to disregard that opinion, view the evidence themselves, and make up their own minds on the issue.[11] Given that the jury had the chance to compare the works themselves, the evidence could support the jury's finding that West's play and Perry's movie are not substantially similar.

"A trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998) (citations omitted). "[T]he fact that the evidence . . . was conflicting on certain elements . . . is not enough in itself to justify the district court's decision to grant a new trial." *Spurlin v. Gen. Motors Corp.*, 528 F.2d 612, 620 (5th Cir. 1976) (citing *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 34-35 (1994)). At best, West has raised issues where the evidence conflicts on the elements required for proving copyright infringement. However, the jury decided against finding infringement of West's copyright

---

[11]That Defendants' expert did not testify on substantial similarity is not fatal. Substantial similarity only becomes an issue once factual copying has been established. *See Positive Black Talk*, 394 F.3d at 367. For the reasons discussed, *supra*, there was adequate evidence for the jury to find West had not met her burden in proving factual copying.

and had evidentiary bases for this decision. *See supra*. Thus, the jury's decision was not against the great weight of the evidence, and West is not entitled to a new trial on this ground.

## CONCLUSION

Based on the reasoning above, the Court **DENIES** West's motion for new trial.

**So ORDERED and SIGNED this 23rd day of July, 2009.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**